Commonwealth *v.* Carlton.

## COMMONWEALTH *vs.* ROBERT A. CARLTON.

No. 96-P-1058.

Plymouth. May 14, 1997. - October 15, 1997.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Malicious Injury to Property. Burning of Property. Practice, Criminal,* Assistance of counsel, Speedy trial. *Constitutional Law,* Speedy trial.

At the trial of indictments alleging burning a building and malicious destruction of property over $250, the evidence was sufficient to warrant a reasonable jury to conclude that the defendant was guilty of both charges. [703-704]

A criminal defendant did not demonstrate ineffective assistance of his trial counsel by counsel's failure to file a motion for a speedy trial for more than three years after the arraignment, by counsel's tactical decision not to introduce evidence referred to in the opening statement, or by counsel's failure to object to evidence properly admitted. [704-706]

A criminal defendant's motion to dismiss indictments pursuant to Mass. R. Crim. P. 36(b)(1)(C), for failure of the Commonwealth to try him within the twelve-month period of the rule, was properly denied, where the record demonstrated that the defendant acquiesced in the periods of delay. [706-707]

INDICTMENTS found and returned in the Superior Court Department on June 29, 1992.

The cases were tried before *Robert L. Steadman,* J.

*Lois J. Martin* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. A jury found the defendant, Robert A. Carlton, guilty of burning a building (G. L. c. 266, § 2), and malicious destruction of property over $250 (G. L. c. 266, § 127). The defendant appeals from the denial of his motion for a required finding of not guilty, and from the denial of his motion to dismiss for lack of a speedy trial. He also argues that his trial counsel was ineffective.

Considering the evidence in the light most favorable to the Commonwealth, the jury could have found the following facts. A Halloween northeaster struck Scituate on October 30, 1991, and ravaged the coastline. The Minot Light Inn was flooded during the storm. Arthur Iorio, the owner, was contacted by the defendant, an electrician, who offered to assist with the emergency. On November 5, the defendant set up temporary lights and did an appraisal. His estimate of $45,000 to repair the damage was given to Iorio, who ultimately hired another contractor to restore power to the building.

The next day, on November 6, Iorio asked the defendant to remove his emergency lights and agreed to pay him for the work he had done. The defendant, apparently upset that he was not awarded the contract, drove off in his pick-up truck. Around 4:30 P.M. that same day, he arrived at Iorio's home and spoke with Iorio's wife, who thought he was "a little inebriated."

About 6:00 P.M., a neighbor who lived close to the Inn went over and smelled gasoline. He found an empty gas can belonging to the defendant near a bulkhead leading into the cellar of the building. Shortly thereafter, the neighbor saw smoke coming from the inn. Someone had torched the cellar; the fire burned for "no more than fifteen minutes" before it was extinguished.

1. *Sufficiency of the evidence.* Both the neighbor and a Brooks Pharmacy clerk testified about the defendant's suspicious behavior shortly after the fire broke out. The neighbor saw the defendant driving his car by the Minot Light Inn twice after the fire started, the first time at a speed low enough to observe the scene. The clerk testified that the defendant said to her, "the Minot, it's all gone, it's all gone." In addition, there was evidence that the defendant showered and washed his clothes in the washing machine (including his leather sneakers), and claimed to have showered more than two hours prior to his arrest, even though his hair was still wet when he was apprehended. See *Commonwealth* v. *Cordle*, 404 Mass. 733, 741 (1989), *S.C.*, 412 Mass. 172 (1992); *Commonwealth* v. *Doucette*, 408 Mass. 454, 461 (1990).

Some of the material used to ignite the fire consisted of paper circulars which bore the name and address of his housemate. See *Commonwealth* v. *McIntosh*, 10 Mass. App. Ct. 924, 925 (1980). The defendant was familiar with the area, and the distances involved show that he was able to have committed the crime within the time allowed. See *Commonwealth* v. *Green-*

*berg*, 34 Mass. App. Ct. 197, 203 (1993). Moreover, there was evidence that the defendant was angry, upset, and depressed when Iorio did not award him the contract for electrical repair work at the Minot Light Inn. See *Commonwealth* v. *Robinson*, 34 Mass. App. Ct. 610, 615 (1993).

Arsonists are "furtive criminals," *Commonwealth* v. *Jacobson*, 19 Mass. App. Ct. 666, 674 (1985), and the Commonwealth must often rely on a "web of circumstantial evidence" when establishing guilt beyond a reasonable doubt. *Commonwealth* v. *Blonde*, 29 Mass. App. Ct. 914, 916 (1990). This case fits within the norm, in that the evidence against the defendant on the record is mainly circumstantial.

A reasonable jury, viewing the evidence in a light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), could conclude that the defendant was able to commit the burning of the building within the time frame set by the uncontroverted evidence.

The defendant's other contention that there was not enough evidence introduced to support the sentence imposed by the judge under G. L. c. 266, § 127, for malicious destruction of property over $250, i.e., the toilet in Scituate's lock-up, is without merit. To the contrary, defense counsel admitted "[t]he evidence [of value] went in excess of $250, I have no problem with that." See *Commonwealth* v. *LaFontaine*, 32 Mass. App. Ct. 529, 535 (1992). Contrast *Commonwealth* v. *Cimino*, 34 Mass. App. Ct. 925, 927-928 (1993).

2. *Ineffective assistance of counsel.* That trial counsel did not file a motion for speedy trial for more than three years after the arraignment affords the defendant nothing. The defendant's argument that memory loss of the witnesses in the case harmed his defense belies the fact that defense counsel used the delay to attack their memory and credibility based on the timeline between the events in question and the time of trial. To the contrary, the pertinent parts of the record relied on by the defendant in this argument show weaknesses in the case against the defendant when the Commonwealth conducted its direct examination of its witness, Althea Fisk, who was required to refresh her memory on some critical points.

That a potential witness, Robert Fisk, died before trial does not make defense counsel ineffective. The defendant did not offer proof of when the witness died, so it remains mere speculation to assert he would have been available for an earlier trial.

There was also no offer of proof regarding how his testimony would have benefited the defendant. "We should recall that in a case where ineffective assistance of counsel is charged, there ought to be some showing that better work might have accomplished something material for the defense." *Commonwealth v. Satterfield*, 373 Mass. 109, 115 (1977).

We note that where, as here, delay may have benefited the defendant in the preparation of his case, and it appears that defense counsel "felt it tactically advantageous not to press for motions resolution and trial," *Commonwealth v. Lauria*, 411 Mass. 63, 66 (1991), the failure to object "is indicative of a belief on his part that he was not being prejudiced by the delay." *Commonwealth v. Fontaine*, 8 Mass. App. Ct. 51, 53 (1979). Nothing appears on this record that counsel was ineffective, in a constitutional sense, in failing to object to various continuances. *Commonwealth v. Tanner*, 417 Mass. 1, 4 (1994).

In his opening statement defense counsel told the jury that he would call James Fair, the other electrician Iorio had consulted about the job. His subsequent failure to call him as a witness could reasonably be seen as a "strategic decision" based on the testimony elicited from Iorio at trial. *Commonwealth v. Nardone*, 406 Mass. 123, 126 (1989). Fair would have corroborated other witnesses concerning the defendant being "upset" and "disturbed" about not getting the job. When Iorio failed to mention anything about the defendant's ire, the value of Fair's testimony was greatly reduced. It is not per se ineffective assistance to fail to produce evidence mentioned in opening statements. *Id.* at 127-128.

The defendant's claim that trial counsel's failure to object to certain evidence resulted in ineffective assistance of counsel is without merit. Iorio's identification of the gas can as the defendant's was enough to authenticate the can, eliminating a need to establish a chain of custody. *Commonwealth v. Andrews*, 403 Mass. 441, 462 (1988). A deficiency in the foundation for the admission of the can raises a question of weight, not admissibility. *Commonwealth v. Zitano*, 23 Mass. App. Ct. 403, 407 (1987). As William Fisk's testimony about the defendant's employment status was specifically limited to his personal knowledge and observations of the defendant, and his personal knowledge of circumstances he witnessed, it was admissible. *Commonwealth v. Whitehead*, 379 Mass. 640, 657 (1980). "Counsel are not required to make an objection which

has no reasonable likelihood of success." *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 253 (1988).

3. *Lack of speedy trial.* The docket and a stipulation of facts filed by the parties indicate the following sequence of events.[1] On July 14, 1992, the defendant's attorney filed an appearance and the case was continued to September 9, 1992, for a pretrial conference. The entry for July 14, 1992, also indicates that Mass.R.Crim.P. 36, 378 Mass. 909 (1979), was waived for this period. A pretrial conference report was filed on September 9, 1992; thereafter, there were numerous continuances, either by agreement of the parties or without objection of the defendant. On June 27, 1995, the parties agreed to a September 14, 1995, trial date. On September 14, 1995, the defendant filed a motion to dismiss pursuant to Mass.R.Crim.P. 36(b)(1)(C), 378 Mass. 910 (1979), alleging that the Commonwealth failed to try him within the twelve-month period specified by the cited subdivision of the rule. The trial judge denied the motion on November 6, 1995.

The defendant should have been tried by July 14, 1993, twelve months after the return date; since he was not, the defendant has made out a prima facie case of rule 36(b)(1) violation. See *Commonwealth* v. *Judd*, 25 Mass. App. Ct. 921, 923 (1987). The Commonwealth has the burden of showing that the delay was justified. See *Barry* v. *Commonwealth*, 390 Mass. 285, 292 (1983).

"In order to meet its burden, the Commonwealth does not have to demonstrate that the defendant assented, on the record, to the various continuances of the trial dates. Rather, it has been held that under rule 36, it is 'the obligation of the defense counsel to *object* to delay.' . . . Lack of an objection to a continuance of a scheduled trial date shows that the defendant has acquiesced in the delay" (emphasis original). *Commonwealth* v. *Fleenor*, 39 Mass. App. Ct. 25, 27 (1995). In the present case, a review of the docket and the stipulation of facts filed by the parties indicates that most, if not all, of the periods of delay were due to continuances of scheduled trial dates which

---

[1]The docket contains no entries for the period between May 25, 1994, and September 14, 1995. The stipulation of facts outlines the events that occurred during that time period.

were either agreed to, or not objected to, by defense counsel.[2] See *id.* at 27 n.3. There was no error in denying the motion to dismiss.

*Judgment affirmed.*

---

[2]Even were all the periods of delay not specifically agreed to by the defendant counted against the Commonwealth, a proposition we do not endorse, the Commonwealth has still justified enough days to warrant the denial of the motion to dismiss.