SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. THANH DU

 
 Docket:
 SJC-13557
 
 
 Dates:
 September 6, 2024 - November 27, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Controlled Substances. Electronic Surveillance. Cellular Telephone. Search and Seizure, Electronic surveillance. Evidence, Wiretap. Statute, Construction. Practice, Criminal, Motion to suppress, Waiver. Words, "Interception," "Contents."
 
 

             Indictments found and returned in the Superior Court Department on January 8, 2020.
            A pretrial motion to suppress evidence was heard by Catherine H. Ham, J.
            Applications for leave to prosecute an interlocutory appeal were allowed by Wendlandt, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.  After review by the Appeals Court, 103 Mass. App. Ct. 469 (2023), the Supreme Judicial Court granted leave to obtain further appellate review.
            Paul B. Linn, Assistant District Attorney, for the Commonwealth.
            Nancy Dolberg, Committee for Public Counsel Services, for the defendant.
            Mary Lee, Assistant District Attorney, for district attorney for the Berkshire district & others, amici curiae, submitted a brief.
            Joshua M. Daniels & Mason A. Kortz, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.
            DEWAR, J.  In this appeal, we are asked to consider the scope of the suppression remedy provided by the wiretap act, G. L. c. 272, § 99 P, when police violate that statute by secretly making an audio-visual recording of an oral communication.  Acting without a warrant, an undercover officer made a series of audio-visual recordings using his cellular telephone while purchasing drugs from the defendant, capturing audio recordings of their discussions and also showing the defendant in the video footage.  A judge allowed in part the defendant's pretrial motion to suppress, excluding the audio component of the recordings but permitting the Commonwealth to introduce in evidence the video footage if shown silently.  We conclude that, where the police secretly make such a warrantless audio-visual recording of a defendant's oral communication in violation of the wiretap act, the video footage must be suppressed together with the audio component.  The remedy prescribed by the Legislature includes suppression of "any information concerning the identity of the parties to such communication or the existence . . . of that communication," G. L. c. 272, § 99 B 5, and the video footage provides "information" in both those forms.[1]
            1.  Background.  "We recite the facts found by the motion judge" following an evidentiary hearing, "supplemented by our independent review of the video footage from the . . . camera."  Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021).  In November 2019, a Boston police detective was called to assist with the investigation of a death believed to have resulted from a drug overdose.  With the assistance of the decedent's family, the detective obtained access to the decedent's cellular telephone and discovered a text message exchange with an individual who, based on the exchange, appeared to have been supplying the decedent with narcotic drugs.  Through further investigation, the detective obtained information that the telephone number associated with the text message exchange belonged to the defendant.  In transactions arranged using this telephone number, an undercover officer made purchases from the defendant on three occasions.  Each time, the defendant approached the officer on foot at the agreed-upon public place, spoke with the officer, and then sold him packages of purported heroin or fentanyl in exchange for one hundred dollars.
            On each occasion, prior to the defendant's arrival, the undercover officer activated an application called "Callyo" on his department-issued cellular telephone to create an audio-visual recording of his interaction with the defendant.  In the recording of the first transaction, the defendant can briefly be observed approaching the undercover officer, and the two then discuss the sale while the camera is pointed down at the sidewalk for most but not all of the discussion.[2]  The recordings of the second and third transactions more clearly show the defendant's face, and the defendant again can be heard discussing each transaction with the undercover officer.  After the third transaction, police arrested the defendant.
            The defendant was charged with three counts of distributing a class A substance in violation of G. L. c. 94C, § 32 (a), one count of distributing a class B substance in violation of G. L. c. 94C, § 32A (c), and as a subsequent offender with respect to each count.  He moved to suppress the recordings of the three transactions as warrantless interceptions of his oral communications in violation of the wiretap act.  See G. L. c. 272, § 99 P.
            The motion judge issued a memorandum and order allowing the defendant's motion to suppress in part.  The judge suppressed "the audio recording" but held that the "video recording, without the audio, is still permissible evidence."  Both parties sought and were granted leave to appeal from the decision.  The Appeals Court affirmed in part and reversed in part, concluding that both the audio and video components of the recordings must be suppressed under the wiretap act.  See Commonwealth v. Du, 103 Mass. App. Ct. 469, 480-481 (2023).  We allowed the Commonwealth's application for further appellate review.
            2.  Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law."  Commonwealth v. Morris, 492 Mass. 498, 502 (2023), quoting Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  "[W]e review questions of statutory interpretation de novo."  Morris, supra at 502-503, quoting Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).
            "Our primary goal in interpreting a statute is to effectuate the intent of the Legislature."  Commonwealth v. Rainey, 491 Mass. 632, 641 (2023), quoting Pesa, 488 Mass. at 331.  We begin with the statute's plain language, as it is "the best indication of the Legislature's ultimate intent," Commonwealth v. Hyde, 434 Mass. 594, 600 (2001), and endeavor to ascertain that intent from "all [the statute's] words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (emphasis and citation omitted), Rainey, supra.
            "The wiretap statute makes it a crime to 'willfully commit[] an interception . . . of any . . . [wire or] oral communication.'"  Morris, 492 Mass. at 503, quoting G. L. c. 272, § 99 C 1.  With certain exceptions not applicable here, "interception" means "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device."  G. L. c. 272, § 99 B 4.  Although generally prohibiting interceptions by both private persons and law enforcement officers, see G. L. c. 272, § 99 C 1, the statute prescribes a process by which law enforcement officers may, upon a sufficient showing, obtain a warrant to make specified interceptions, see G. L. c. 272, § 99 D 1 d, E-N.  In addition to providing for criminal penalties for unlawful interceptions, see G. L. c. 272, § 99 C 1, the wiretap statute provides a suppression remedy for criminal defendants, see G. L. c. 272, § 99 P.
            Before turning to our interpretation of this suppression remedy, we first briefly address the Commonwealth's argument that we need not reach the issue.  For the first time on appeal, the Commonwealth argues that no unlawful "secret[]" recordings of the defendant took place -- notwithstanding the testimony below from a detective, credited by the motion judge, that undercover officers' recordings are "kept secret" to avoid frustrating the very purposes of the investigation.  The Commonwealth contends that no secret recordings took place here because it is apparent from the video footage that the undercover officer was holding the cellular telephone in his hand as he recorded, and, the Commonwealth infers, the cell phone would therefore have been visible to the defendant.  The Commonwealth further urges this court to revisit our interpretation of the term "secretly" in the wiretap act, see Commonwealth v. Jackson, 370 Mass. 502, 507 (1976) (requiring "actual knowledge" of recording, "proved where there are clear and unequivocal objective manifestations of knowledge"), and hold that a recording is not done "secretly" if, "based on objective indicators, such as the presence of a recording device in plain view, one can infer that the subject was aware that [he] might be recorded," Glik v. Cunniffe, 655 F.3d 78, 87 (1st Cir. 2011).  Because the Commonwealth did not make these arguments below, they are waived.  See Commonwealth v. Leslie, 477 Mass. 48, 58 (2017).  And the Commonwealth has presented no other basis for disturbing the motion judge's conclusion that the defendant was secretly recorded in violation of the wiretap act.
            We therefore turn to the scope of the statute's suppression remedy.  This remedy permits defendants to "move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom" if, among other grounds, "the communication was unlawfully intercepted."  G. L. c. 272, § 99 P.  The statute broadly defines the "contents" that may be suppressed as "any information concerning the identity of the parties to [the wire or oral] communication or the existence, contents, substance, purport, or meaning of that communication."  G. L. c. 272, § 99 B 5.
            Based on the Legislature's intent expressed in the wiretap act, we conclude that, where an unlawfully intercepted communication is an audio-visual recording showing one of the parties to the communication, the statute's suppression remedy extends to the recording in its entirety, including the video footage.  See Commonwealth v. Jarabek, 384 Mass. 293, 298 (1981) (admissibility under wiretap act "must turn . . . on the legislative intent expressed in the statute").  Under the statute's broad definition of the "contents" of the oral communication to be suppressed, see G. L. c. 272, § 99 B 5, P, such video footage is "contents" of the communication for two reasons.  First, the footage shows one of the speakers -- here, the defendant -- meaning that the footage contains "information concerning the identity" of a party to the communication.  G. L. c. 272, § 99 B 5.  Second, the footage shows the person engaging in the unlawfully intercepted oral communication and therefore contains "information concerning . . . the existence . . . of that communication."  Id.  The wiretap act's plain language thus requires suppression of the video footage as "contents" of the oral communication; "[i]t is not our function to craft unwarranted judicial exceptions to a statute that is unambiguous on its face."  Hyde, 434 Mass. at 604.  See Jarabek, supra at 299 ("the Legislature intended to tailor its statutory remedy of suppression to the evil of unauthorized interceptions, by ensuring that no evidence of the existence of the interception comes to the attention of the fact finder").
            Our conclusion today is consistent with our interpretation of the wiretap act's suppression remedy in Jarabek, 384 Mass. at 297-300.  There, we were presented with the question whether the statute authorized suppressing an informant's testimony about his recollection of conversations recorded in violation of the wiretap act.  We noted that the statute defines "contents" so expansively that it "reasonably may be read to include the live testimony, from memory, of a party to a conversation."  Id. at 298.  We observed, however, that the statute was ambiguous in this regard, and "could mean simply that not only must the recording of an unlawfully intercepted conversation be suppressed, but also any evidence that the conversation was recorded:  for example, any transcripts or summaries of, or references to, the recording; or the testimony of a third person (not a party to the conversation) who either monitored the conversation at the time it took place or listened to a recording of it later."  Id.  Resolving this ambiguity, we reasoned that "[w]hat the Legislature deemed offensive to individual privacy, and thus sought to regulate, was the secret interception of communications, and not other uses of subterfuge in the course of criminal investigations," such as the use of an informant.  Id.  Accordingly, we concluded that, "[i]f live testimony is not the product of an unauthorized interception but is independent of it, its suppression would go beyond the policy of deterring law enforcement officers from committing unauthorized interceptions."  Id. at 299.  Here, by contrast, the video footage was captured by an application on the undercover officer's cellular telephone that simultaneously captured the offending audio; suppression of the video footage in these circumstances furthers the deterrence policy consistent with the breadth of the term "contents" in the wiretap act.
            We are thus unconvinced by the Commonwealth's argument, citing Jarabek, 384 Mass. at 298, that suppression is not required here because, if the recordings of the defendant were stripped of their offending audio components, the resulting silent video recordings would not contain "any evidence that [any] conversation was recorded."  To begin, as discussed, the footage (even without the contemporaneously recorded audio) shows at least one party to the unlawfully recorded communication and thus contains information that the conversation between the undercover officer and the defendant was in fact recorded.  More importantly, the statute's suppression remedy is not limited to evidence of the fact of the unlawful audio recording but instead encompasses the "contents" of the intercepted oral communication as defined by the Legislature.  See G. L. c. 272, § 99 B 5, P.  And, under that definition, the video footage must be suppressed.
            This result is also consistent with the Legislature's stated purposes in providing a strong remedy for violations of the wiretap act.  The statute's preamble declares that "the uncontrolled development and unrestricted use of modern electronic surveillance devices pose grave dangers to the privacy of all citizens of the commonwealth," and that "[t]he use of such devices by law enforcement officials must be conducted under strict judicial supervision and should be limited to the investigation of organized crime."  G. L. c. 272, § 99 A.  To effect this strict judicial supervision, the Legislature prescribed a detailed series of requirements for obtaining a warrant in order to conduct secret recordings during criminal investigations, see G. L. c. 272, § 99 D 1 d, E-N, as well as the suppression remedy we consider today.  The Legislature's "focus" thus "was on the protection of privacy rights and the deterrence of interference therewith by law enforcement officers' surreptitious eavesdropping as an investigative tool."  Rainey, 491 Mass. at 643, quoting Commonwealth v. Gordon, 422 Mass. 816, 833 (1996).  Permitting routine introduction in evidence of video footage captured as part of unlawful warrantless audio-visual recordings of oral communications -- readily made using today's ubiquitous cellular telephones, see Commonwealth v. Almonor, 482 Mass. 35, 41 (2019) -- would undermine the deterrent effect the Legislature intended to safeguard the privacy of the Commonwealth's residents.  See Commonwealth v. Santoro, 406 Mass. 421, 423 (1990).
            3.  Conclusion.  For the reasons set forth above, we hold that, where a judge grants a defendant's motion to suppress the contents of an oral communication that was unlawfully intercepted in an audio-visual recording showing at least one party to the communication, the scope of the wiretap act's remedy includes suppression of the recording's video footage.  Accordingly, we affirm so much of the motion judge's order as allowed the defendant's motion to suppress the audio components of the audio-visual recordings of the defendant's intercepted oral communications and reverse so much of the order as denied the motion to suppress the video footage.
So ordered.
 
footnotes

 
            [1] We acknowledge the amicus briefs submitted by the Massachusetts Association of Criminal Defense Lawyers and by nine district attorneys.
            [2] Contrary to the motion judge's factual finding that the defendant "is not depicted" in the first video recording, the video footage briefly shows him approaching the officer and later briefly shows a partial profile of his face while he walks alongside the officer during the conversation.